NOT DESIGNATED FOR PUBLICATION

No. 119,937

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEJAY LYNN SCHLEGEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wilson District Court; DAVID WILLIAM ROGERS, judge. Opinion filed October 25, 2019. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: Pursuant to a plea agreement, Dejay Lynn Schlegel pled no contest to one count each of reckless second-degree murder, arson, interference with law enforcement, and theft. Over Schlegel's objection, his criminal history score was found to be a C, and he was sentenced to 238 months in prison. Schlegel now appeals, claiming that the district court erred when it included three uncounseled municipal court convictions in his criminal history score calculation. Finding no error, we affirm.

FACTS

Schlegel was charged with one count of first-degree murder, an off-grid person felony; one count of aggravated human trafficking, a severity level 1 person felony; one count of arson, a severity level 6 person felony; one count of theft, a severity level 9 nonperson felony; one count of cruelty to animals, a nongrid nonperson felony; and one count of theft, a class A nonperson misdemeanor. Pursuant to a plea agreement, Schlegel eventually agreed to plead no contest to one count of reckless second-degree murder, a severity level 2 person felony; one count of arson, a severity level 6 person felony; one count of interference with law enforcement, a severity level 8 nonperson felony; and one count of theft, a severity level 9 nonperson felony. In return, the State agreed to drop the remaining charges. The parties also agreed to jointly recommend the standard sentence from the appropriate grid box for counts one through three and the aggravated sentence for count four, with each count to be served consecutively. The district court accepted Schlegel's pleas—after ensuring that there was a factual basis and that they were freely, voluntarily, and intelligently made—and found him guilty on all four counts. It then ordered a presentence investigation (PSI) report and set the matter for sentencing.

The PSI report was filed a week before sentencing, on August 1, 2018, and indicated that Schlegel had a criminal history score of C. Schlegel objected to that determination, arguing that three of his uncounseled municipal court convictions—two from Independence Municipal Court Case No. 16-1518 and one from Neodesha Municipal Court Case No. 06-299—should not have been included in his criminal history score calculation because they were obtained in violation of his Sixth Amendment right to counsel. In the Independence case, Schlegel waived his right to counsel and the court subsequently convicted him on one count of domestic battery and one count of unlawful restraint, both person misdemeanors. The court sentenced Schlegel to five days in jail "irrevocably suspended," and ordered him to pay $600 in fines plus court costs over a three-month period. Similarly, in the Neodesha case, the court convicted Schlegel on one

count of domestic battery, a person misdemeanor, and one count of disorderly conduct, a nonperson misdemeanor, and ordered him to pay $369.50 in fines over a 30-day period.

The district court conducted an evidentiary hearing on Schlegel's objection to his criminal history score. With regard to the Independence case, Schlegel testified he only signed the waiver of his right to counsel because he was told that he would not be facing any jail time. The document that Schlegel signed, entitled "Waiver of Right to Counsel," stated:

"I, the defendant in the above captioned case, hereby waive and give up my right to counsel in this action. I understand:

(1) The nature of the charges against me.

(2) The maximum punishment which would be imposed if I were to be found guilty.

(3) That any defenses to these charges which I may have but do not raise, will be lost.

(4) That I will be held to the same standards as if I were represented by an attorney in the action.

(5) That the Court will not assist me in my defense.

(6) That no threats or promises have been made to me to induce me to sign this waiver.

(7) That if the Court has informed me that there is a possibility that I may serve a jail sentence, if I were to be convicted, and if I were determined to be indigent and eligible for a Court appointed attorney, then an attorney would have been appointed to represent me.

"Having considered the foregoing, I waive my right to be represented by counsel in this manner and elect to proceed without counsel."

The waiver was signed and dated by both Schlegel and the municipal court judge who certified that Schlegel appeared before him "and made a knowing and intelligent waiver of his right to counsel." Schlegel testified that after reading the language in paragraph seven of the waiver and being told that he was not facing a jail sentence, he did not

3

believe that he was entitled to court appointed counsel. Rather than hire his own attorney, Schlegel chose to waive his rights and ultimately agreed to plead no contest to both counts. As noted above, he was sentenced to five days in jail "irrevocably suspended" and ordered to pay $600 in fines plus court costs over a three-month period. Schlegel testified that he was threatened with jail time if he failed to pay those costs and fines on time. That was not an issue, however, because Schlegel made his payments on time and served no jail time in the Independence case.

With regard to the Neodesha case, Schlegel testified that he was not provided with an attorney, was ultimately convicted of battery and disorderly conduct, and was ordered to pay $369.50 in court costs and fines. Schlegel further testified that he was threatened with arrest and jail time if he failed to pay his fines and court costs within 30 days and therefore made his payments on time so as to avoid that result.

After listening to Schlegel's testimony and considering the arguments of counsel, the district court found that Schlegel was not entitled to an attorney in either the Independence case or the Neodesha case. It then further found that, even if he was entitled to an attorney in the Independence case, he effectively waived that right when he freely and voluntarily signed the "Waiver of Right to Counsel" form. The district court therefore denied and overruled Schlegel's objection to his criminal history score. In accordance with the terms of the plea agreement, the court sentenced Schlegel to serve 238 months in prison with a postrelease period of 36 months; ordered him to pay $162,445.73 in restitution as well as court costs; and advised him that, upon his release, he will be required to register as a violent offender for 15 years. Schlegel appeals.

ANALYSIS

Schlegel argues the district court improperly included two person misdemeanor convictions from the Independence case and one person misdemeanor conviction from

4

the Neodesha case when it calculated his criminal history score. Specifically, Schlegel claims that the district court erred in finding that he did not have a right to counsel in either of the municipal court proceedings and that even if he did, he validly waived that right in the Independence case.

Schlegel's argument involves interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq., and is therefore a question of law subject to unlimited review. See *State v. O'Connor*, 299 Kan. 819, 822, 326 P.3d 1064 (2014).

When calculating a defendant's criminal history score, all prior convictions must be considered unless they are an element of the present crime, enhance the severity level of applicable penalties, or elevate the present crime from a misdemeanor to a felony. K.S.A. 2018 Supp. 21-6810(d)(10). The preparation and filing of a criminal history worksheet satisfies the State's burden of proof regarding a defendant's criminal history score unless the defendant disputes the worksheet's findings. K.S.A. 2018 Supp. 21-6814(b). If the defendant does make a specific and timely objection to the criminal history score, then the burden is on the State to prove the disputed portion of the defendant's criminal history score by a preponderance of the evidence. K.S.A. 2018 Supp. 21-6814(a), (c). For criminal history purposes, three person misdemeanor convictions are aggregated together to count as one person felony conviction. K.S.A. 2018 Supp. 21-6811(a). But Kansas courts consistently hold that "[a]n uncounseled misdemeanor conviction obtained in violation of the misdemeanant's Sixth Amendment right to counsel may not be collaterally used for sentence enhancement in a subsequent criminal proceeding." *State v. Youngblood*, 288 Kan. 659, Syl. ¶ 3, 206 P.3d 518 (2009).

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have the right to the assistance of counsel for his or her defense. That right was made applicable to the states by the due process clause of

the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 339-45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). But this right is not absolute and instead only attaches in the guilt phase of the prosecution of misdemeanor offenses if a defendant is sentenced to a term of imprisonment, be it actual, suspended, or conditioned on a term of probation. See *Alabama v. Shelton*, 535 U.S. 654, 658, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002) ("We hold that a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged."); *Argersinger v. Hamlin*, 407 U.S. 25, 33, 36-37, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972) (holding that defense counsel must be appointed in any prosecution that actually leads to imprisonment, even for a brief period). That means that in the context of determining a defendant's criminal history score, an uncounseled misdemeanor conviction may be included so long as the defendant was not given a prison sentence, be it actual, suspended, or conditioned on a term of probation. See *Youngblood*, 288 Kan. 659, Syl. ¶¶ 2-3; see also *State v. Long*, 43 Kan. App. 2d 328, 331-38, 225 P.3d 754 (2010) (providing a detailed overview of the development of the right to counsel in misdemeanor cases in Kansas).

Turning first to the Neodesha case, Schlegel acknowledges that the municipal court did not impose a jail sentence or probation and instead only ordered him to pay $369.50 in fines. Nevertheless, Schlegel claims he was threatened with arrest and jail time if he failed to pay those fines on time. By imposing those fines, Schlegel argues the court essentially was placing him on unsupervised probation because failure to comply with the terms of the sentence (i.e., timely pay the fines) carried with it the same potential for incarceration.

Schlegel's argument fails for a number of reasons. First, it is directly adverse to the published opinion in *State v. Crawford*, 46 Kan. App. 2d 401, 420, 262 P.3d 1070 (2011), in which a panel of this court specifically held that, pursuant to *Youngblood*, a defendant does not have a right to counsel when "he [or she is] not sentenced to a term of

6

imprisonment, whether imposed, suspended, or conditioned on probation." Second, as the *Crawford* panel correctly noted, to accept Schlegel's argument and allow the mere possibility of imprisonment—when no such sentence has been imposed—to implicate the right to counsel would render the distinction created by *Shelton* and *Argersinger* meaningless and would make it so that "uncounseled misdemeanors can *never* be scored in criminal history because there is always a potential for imprisonment." *Crawford*, 46 Kan. App. 2d at 421. Finally, and most fundamentally, Schlegel's argument fails because it improperly conflates his sentence for violating a Neodesha city ordinance with his potential punishment if he failed to follow the court's order. See *State v. Long*, 41 Kan. App. 2d 477, 485, 203 P.3d 45 (2009) ("K.S.A. 12-4510 provides that when a municipal court levies a fine as punishment, the defendant's failure to pay the fine in the manner specified may constitute contempt of court. K.S.A. 12-4106[a] further provides that a municipal judge has the same power as a district judge to imprison a defendant for contempt. Here, whether [the defendant] served jail time for the contempt does not impact our analysis of his criminal history."). For these reasons, we find Schlegel's uncounseled person misdemeanor conviction for battery in the Neodesha case was properly included in the calculation of his criminal history score in the present case. See *Youngblood*, 288 Kan. 659, Syl. ¶¶ 2-3.

Although Schlegel also claims the district court erred by using the two municipal convictions from Independence to calculate his criminal history score, we find it unnecessary to address that claim. Significantly, Schlegel has two other person misdemeanor convictions that he is not challenging on appeal. Because we have found the district court properly included the Neodesha conviction in its calculation of Schlegel's criminal history score, the two unchallenged convictions and the Neodesha conviction support the court's finding that Schlegel's criminal history score should be raised from a G to a C. See K.S.A. 2018 Supp. 21-6811(a) ("Every three prior adult convictions . . . of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction . . . of a person

7

felony for criminal history purposes."); K.S.A. 2018 Supp. 21-6804(a) (denoting criminal history score of G as one nonperson felony and criminal history score of C as one person and one nonperson felony). Thus, we find no error in the district court's calculation of Schlegel's criminal history score.

Affirmed.